UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TANYA YOUNGBLOOD, JEAN SAMUEL and BEVIS THOMAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>FAMILY DOLLAR STORES INC., FAMILY DOLLAR INC., FAMILY DOLLAR STORES OF NEW YORK INC., AND DOES 1 through 10, inclusive.,<br><br>Defendants.<br>AND<br><br>ANTHONY RANCHARAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br><br>FAMILY DOLLAR STORES, INC.,<br><br>Defendant. | Case No. 09 cv 3176 (RMB/FM)<br><br><br><br><br><br><br><br><br><br><br><br>Case No. 10 cv 07580 (RMB) |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Dated:  May 18, 2011

Respectfully submitted,
s/ Amy S. Ramsey

John A. Ybarra
Amy Schaefer Ramsey
Syeda M. Maghrabi
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654

*Attorneys for Defendants*

## I.     INTRODUCTION

Plaintiffs are current and former Store Managers of Family Dollar who claim they were misclassified as exempt under the New York Labor Law, and, accordingly, they (and other Store Managers throughout New York) allegedly should have been paid overtime for all hours worked in excess of 40 per week.  Plaintiffs have moved to certify a class of Store Managers throughout New York, contending that each and every one of them performs the same daily duties in accordance with Company policies.  However, the overwhelming evidence confirms that there are simply too many differences in Store Managers' actual duties to allow for adjudication of all claims in a single representative proceeding.  Thus, this case is analogous to the Second Circuit's decision in *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), where the Court affirmed the denial of certification because the particularized inquiries necessary to examine the exemption defense would dwarf any common questions.  As was true in *Myers*, the varying testimony of the named plaintiffs, other Store Managers and Company representatives shows that there is no generalized evidence upon which the putative class may rely; thus, it is necessary to conduct an individualized, fact-specific examination into each Store Manager's claims.

In a futile attempt to achieve certification, Plaintiffs rely almost exclusively on *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).  However, *Damassia* is ***not*** controlling upon this Court, and notwithstanding Plaintiffs' unsupported interpretation of the case, the Second Circuit did ***not*** "endorse" *Damassia*.  *Myers*, 624 F.3d at 547.  Rather, the *Myers* Court distinguished *Damassia* on the basis that it involved different facts than those before the Court – but did not otherwise indicate any approval of the decision.  624 F.3d at 549-50.  Plaintiffs attempt to analogize this case to *Damassia*, but each of their strained comparisons fail.  A common job description does not support certification, as it is well accepted that the Court must examine Plaintiffs' ***actual duties.***  *Myers*, 624 F.3d at 549.  In any event, Plaintiffs in this case

*explicitly concede* that every store is different and that their duties and responsibilities varied depending on which store they managed. Likewise, the existence of Company policies, procedures and training materials do not suffice to establish predominance because, unlike *Damassia*, here, the record evidence demonstrates that many Store Managers did not even read, let alone follow, these materials, and the daily activities of Plaintiffs and the class were not strictly governed by those procedures. Also unlike *Damassia*, Family Dollar did not in any way concede -- whether through deposition testimony or in its FLSA Audit[1] -- that Store Managers perform "substantially the same" duties. In fact, Plaintiffs and other Store Managers themselves confirmed that their job duties do vary from store to store and that each store was different. These differences among Store Managers are material, and impact fundamental questions in the executive exemption analysis, such as the authority to hire, fire, or evaluate employees and set rates of pay, the amount of time spent performing managerial duties such as training, supervising and disciplining employees, and the extent to which they exercised discretion and deviated from Family Dollar's best practices. In short, *Damassia* does not advance Plaintiffs' claims.

Thus, since the experiences of Plaintiffs vary so widely, there is simply no way that Plaintiffs' experiences can be generally applied to the proposed class of Store Managers. The individualized issues that this Court and/or a jury would need to consider in adjudicating this

---

[1] Plaintiffs' reliance on the Company's FLSA Audit is unavailing. Plaintiffs rely on a partial sentence of the Audit that reads "the basic tasks that a Store Manager must perform to operate a store are the same across all three classifications," but conspicuously omit the remainder of that sentence, which states "although time spent on various tasks may vary greatly across stores and between Store Managers." *See* FLSA Audit at FD-Rancharan-Youngblood-004811, attached as Exhibit 1. Under the regulations, the amount of time spent on various management activities is a factor in the exemption analysis. 29 C.F.R. § 541.700(a). Also overlooked by Plaintiffs, the FLSA Audit also prominently confirms that "the FLSA demands an individualized inquiry based on the specific facts concerning individual Store Managers." *See* FLSA Audit at FD-Rancharan-Youngblood-004796.

matter ensure that a class action would simply be unmanageable.  For all of these reasons, the Court should deny Plaintiffs' Motion for Class Certification.

## II.    STATEMENT OF FACTS

Family Dollar is a discount retail chain.[2]  Each Family Dollar store is managed by a single Store Manager, who is the highest-level manager at the store and is directly responsible for managing the store and all the employees who work there.[3]  Each Store Manager reports to a District Manager, who oversees approximately 18 to 20 Store Managers.[4]

### A.    Store Managers Perform Varying Duties

Family Dollar has a single job description for the exempt Store Manager position.[5]  It provides that the main objective of any Family Dollar Store Manager is to run a profitable store.[6]  However, Store Managers vary with respect to whether they actually had such responsibility.  Some acknowledge that they were ultimately responsible for the store,[7] while others denied this.[8]

The particular objectives and expectations listed on the job description do not necessarily apply to all Store Managers, due to the individual differences in the store and the individual operating results.[9]  A Store Manager's job is also impacted by the characteristics of the store.[10]

---

[2] Deposition of Barry Sullivan, attached as Exhibit 2, 11:7-12.  Witness testimony following initial citation to the record will hereinafter be cited by Last Name Dep. page: line cite.

[3] Deposition of Anthony Ramcharan, attached as Exhibit 3, 275:16-18, 280:15-17, 294:2-12; Deposition of Tom Gasperini, attached as Exhibit 4, 164:14-15.

[4] Sullivan Dep. 21:25, 22:1-6, 287:6-7.

[5] Sullivan Dep. 172:7-12; Michael Gray Dep. Ex. 14, attached as Exhibit 5; *see also* Exhibit 15 autheticating Exhibit 5.

[6] Sullivan Dep. 177:7-9, 212:4-7; Deposition of George Flyzik, attached as Exhibit 6, 154:10-14.

[7] Deposition of Bruce Allen, attached as Exhibit 7, 78:2-5; Deposition of Kathleen Stanton, Vol. II, attached as Exhibit 8, 52:4-17; Deposition of Barbara Manowitz, attached as Exhibit 9, 184:10-185:6; Deposition of Daniel Bender, attached as Exhibit 10, 139:12-24.

[8] Deposition of Clyde Pierce, Vol. I, attached as Exhibit 11, 32:6-33:10; Deposition of Ward Plummer, attached as Exhibit 12. 192:6-11; Deposition of Kathleen Stanton, Vol. I, attached as Exhibit 13, 34:2-12; Deposition of Aslam Jamali, Vol. I, attached as Exhibit 14, 78:4-8.

[9] Sullivan Dep. 172:7-12; Ex. 5; Sullivan Dep. 179:3-21; 221:14-25; Deposition of Mike Gray, attached as Exhibit 15, 116:11-117:13; Gasperini Dep. 145:1-7.  *See also* Deposition of Tammy

Furthermore, the list of responsibilities on the job description is non-exhaustive[11] and is not to be confused with a list of *actual* Store Manager duties.  The Store Manager must "do whatever it takes to manage a store" and "is expected to have it done, whether they choose to do it themselves or delegate."[12]

**B.      Company Training And Policies Do Not Establish Store Managers' Duties**

Family Dollar has training manuals (formerly called the "Strands" and now known as "TEAM" training), as well as a Store Policy Manual.  Each are guidelines that detail best practices for operating a Family Dollar store.[13]  In support of class certification, Plaintiffs contend that these guidelines are strict edicts that provide "top down" control over every aspect of store operations.  Tellingly, while Plaintiffs provide citations to the guidelines themselves, they do not provide any support for the proposition that the Plaintiffs actually read the materials, let alone that they followed them.[14]  Indeed, several of Family Dollar's Regional Vice Presidents,[15] several putative class members[16] and even some of the **named plaintiffs**[17]

---

Sorokey, attached as Exhibit 16, 123:17-125:2 (agreeing that the Store Manager job description reflects the 14 principal duties and responsibilities of a Store Manager) *cf* Deposition of Todd Bitkower, attached as Exhibit 17, 243:20-244:20, 246:2-24, 251:10-252:11, 253:19-254:13 (agreeing that he carried out some functions on the Store Manager job description, but not all)).

[10] Deposition of Tanya Youngblood, attached as Exhibit 18, 140:3-18, 324:8-325:16 (testifying that her second store was harder to run than her first store because it sold perishable food); Ramcharan Dep. 104:13-106:8 (different register systems); Deposition of Jean Samuel, attached as Exhibit 19, 82:3-17 (different cycle count systems); Deposition of Brenda Otero, attached as Exhibit 20, 166:21-167:7 (duties vary); Deposition of Clyde Pierce, Vol. II, attached as Exhibit 21, 99:12-23, 136:16-137:23 (shoplifting varies); Sorokey Dep. 191:14-25, 205:14-206:12 (disciplining, Door-to-Shelf varies); Deposition of Bevis Thomas, attached as Exhibit 22, 216:19-217:11 (physical conditions vary)).

[11] Sullivan Dep. 172:7-12, 174:12-15, 174:16-25, 176:1-3; Ex. 5.

[12] Flyzik Dep. 154:10-13, 17-21, 155:11-13.

[13] Sullivan Dep. 45:9-17, 46:7-9, 137:1-9.

[14] See Plaintiffs' Memorandum of Law in Support of Certification, at pp. 4-5.

[15] Deposition of Al Clegg, attached as Exhibit 23, 26:23-27:1, 37:22-38:2, 45:25-46:2, 63:11-64:1; Flyzik Dep. 104:5-12.

[16] Allen Dep. 144:19-25, 145:2-10; Deposition of Kristine Spencer, attached as Exhibit 24, 140:23-25, 141:2; Sorokey Dep. 94:7-12; Jamali Dep., Vol. I 147:4-13; Otero Dep. 82:24-25,

themselves testified that they ***never read*** these manuals.

Even those who read these guidelines do not use them in the same way.[18]   Family Dollar has "an acknowledged expectation that [the Store Policy Manual] is not applicable to every individual store manager out there."[19]   As such, rather than strictly adhere to the guidelines, Store Managers also implement their own practices in running the store.   For example, Clyde Pierce recovered his store by applying the various methods he learned in other retail environments – not necessarily the Family Dollar method.[20]   Similarly, Jeffrey Boskat trained his employees to perform Recovery throughout the day, as opposed to just at the end of the day per Company policy.   This way, Boskat's store associates could complete the Recovery process in 20 minutes instead of two hours.[21]   Rather than having store meetings, as suggested by Company policy, Clyde Pierce kept a "communications binder" in his store, where all the associates would communicate with him if they had an issue.[22]

Contrary to Plaintiffs' theory, deviation from the Company guidelines does not necessarily result in a Store Manager's dismissal because if a store is achieving good results, the manner in which those results were achieved is not examined.[23]

---

83:2-8; Deposition of Bonnie Thompson, Vol. II, attached as Exhibit 25, 89:17-90:7; Ramcharan Dep. 181:6-24 (in his first store) *but see* Ramcharan Dep. 182:7-186:4 (in his second store he reviewed only two of the four Strands)).

[17] Youngblood Dep. 139:4-15; Thomas Dep. 73:6-74:16; 74:6-16, 203:8-204:12, 357:20-359:4.

[18] Clegg Dep. 61:5-8, 142:24-25, 143:1-13; Sullivan Dep. 137:1-6, 140:24-25.

[19] Sullivan Dep. 146:24-258, 147:1-2.

[20] Pierce Dep., Vol. II 182:13-25, 183:1-8.

[21] Declaration of Jeffery Boskat, attached as Exhibit 26, ¶ 11.  Declaration testimony following initial citation to record will hereinafter be cited by Last Name Decl. ¶.

[22] Pierce Dep., Vol. II 148:20-25, 149:1-25, 150:1-6.

[23] Pierce Dep. Vol. II 20:12-21:1, 181:23-183:8 (performed Recovery based on previous retail experience and was not terminated); Boskat Decl.,  ¶¶ 11, 37 (deviates from Recovery and Plan-o-gram guidelines, but is still currently employed); *see also* Gray Dep. 113:7-13, Clegg Dep. 60:20-62:7.

**C.      The Variation Among Store Manager Duties And Responsibilities**

The testimony of 22 different Store Managers in this case confirms that Store Managers' actual job duties vastly differ, despite the single job description and guidelines for operations.

**1.      Some Store Managers Perform Hiring Duties; Some Do Not**

Per Company guidelines, Store Managers are supposed to be the "hiring authority" for their stores.[24]    Some Store Managers hire employees without any District Manager involvement.[25]  Other Store Managers confer with their District Managers when making certain hiring decisions (e.g., hiring Assistant Store Managers), but still make the ultimate decisions.[26] Still, other Store Managers contend that they have no hiring authority whatsoever.[27]

Store Managers also differ with respect to involving the Assistant Store Manager in the hiring process.  Some Store Managers choose to involve their Assistants in the interviewing and hiring process, either as part of the Assistant's duties,[28] or for instructive or training purposes.[29] In contrast, other Store Managers never include their Assistants in the hiring process.[30]

---

[24] Gray Dep., 53:11-17, 54:17-22, 55:5-9, 60:17-22; *see also* Sullivan Dep. 209:4-9; 172:7-12; Ex. 5.

[25] Bender Dep. 186:10-17, 188:6-13; Spencer Dep. 52:3-7; Manowitz, 57:4-13; Declaration of William Aulet, attached as Exhibit 27, ¶ 12; Declaration of June Hosier, attached as Exhibit 28, ¶ 9; Declaration of John Peterson, attached as Exhibit 29, ¶ 16.

[26] Deposition of Paul Boyd, Vol. I, attached as Exhibit 30, 39:10-13; Tammy Sorokey Dep. 64:9-14, 65:4-17; Plummer Dep. 234:12-20; Bitkower Dep. 169:7-23, 170:25, 171:2014; Deposition of Rommel Bailey, Vol. I, attached as Exhibit 31, 50:7-19.

[27] Pierce Dep., Vol. I 58: 22-25, 59:1-6, Otero Dep. 54:20-25, 55:2-25, 56:2; Jamali Dep., Vol. I 60:24-25, 61: 2-17.

[28] Youngblood Dep. 69:18-20, 70:14-23.

[29] Samuel Dep. 146:13-24; Stanton Dep., Vol. II 126:17-25, 127:2-8, 24-25, 128:2-7; Boskat Decl. ¶ 16; Declaration of Marcel Calarco, attached as Exhibit 32, ¶ 4; Hosier Decl. ¶ 9; Declaration of Cheryl Klein, attached as Exhibit 33, ¶ 11; Declaration of Terri Robinson, attached as Exhibit 34, ¶ 14; Declaration of Ezra Taylor, attached as Exhibit 35, ¶ 9.

[30] Bender Dep. 186:3-17, 187:6-18; Declaration of Howard Cole, attached as Exhibit 36, ¶ 23; Declaration of Paula Newman, attached as Exhibit 37, ¶ 12.

### 2. Some Store Managers Set Employees' Rates Of Pay; Some Do Not

Some Store Managers set the rate of pay for new hires.[31]   Others deny having the discretion to do so.[32]   Some Store Managers determine employee pay raises for their associates on their own.[33]   Other Store Managers recommend pay raises to their District Managers, who, in turn, accept and implement those recommendations.[34]   Still, other Store Managers have no responsibility related to employee pay raises; instead, the District Manager performs this duty.[35]

### 3. Some Store Managers Train Employees; Some Do Not

Store Managers are expected to be responsible for ensuring that store-level employees are adequately trained.[36]   The TEAM training, Strands, and Store Policy Manual are available training guides and resources.[37]   Some Store Managers train their associates based on these materials.[38]   Some Store Managers provide training through leading by example.[39]   Some Store Managers delegate training to other store employees.[40]   Still, other Store Managers deny having any responsibility whatsoever for training employees.[41]

---

[31]  Spencer Dep. 177:24-25, 178:2-25, 179:3-19; Aulet Decl. ¶ 13; Boskat Decl. ¶ 19; Hosier Decl. ¶ 9; Newman Decl. ¶ 13; Peterson Decl. ¶ 17.

[32]  Pierce Dep., Vol. I 47:6-10; Otero Dep. 38:9-18; Jamali Dep., Vol. I 43:5-11, 54:25, 55:2-25, 56:2-5; Deposition of Christine Klein, Vol. I, attached as Exhibit 38, 63:2-11; Deposition of Monique Leibert, attached as Exhibit 39, 154:24-25, 155:2; Bailey Dep., Vol. I 49:23-25, 50:2.

[33]  Allen Dep. 75:3-6; Peterson Decl. ¶ 17; Declaration of Kimi Carroll, attached as Exhibit 40, ¶ 8; Hosier Decl. ¶ 10; Robinson Decl. ¶ 15.

[34]  Deposition of Bonnie Thompson, Vol. I, attached as Exhibit 41, 24:6-16; Boskat Decl. ¶ 19; Calarco Decl. ¶ 5; Taylor Decl. ¶ 10; Declaration of Edyie Whitmore, attached as Exhibit 42, ¶ 14.

[35]  Klein Dep., Vol. I 64:17-23; Pierce Dep., Vol. I 47:6-23; Manowitz Dep. 311:3-11; Bailey Dep., Vol. I 86:23-25, 87:2-10.

[36]  Sullivan Dep. 172:7-12; Exhibits 5, 15.

[37]  Sullivan Dep. 52:14-16, 123:6-13.

[38]  Allen Dep. 144:19-25, 145:2-10; Spencer Dep. 140:23-25, 141:2; Stanton Dep., Vol. II 70:7-21, 75:24-25, 76:2-12, 22-24, 77:18-20, 25, 78:2-5, 144:22-25; Sorokey Dep. 94:7-12), while other Store Managers have never even read them (*see* pp. 4-5, *supra*).

[39]  Youngblood Dep. 94:6-25, 95:2-3; Allen Dep. 165:5-25; Bender Dep. 15:12-25, 16:2; Calarco Decl. ¶ 10; Whitmore Decl. ¶ 22.

[40]  Thomas Dep. 315:21-316:19; Spencer Dep. 140:23-141:20; Thompson Dep., Vol. II 69:20-

### 4. Some Store Managers Discipline/Terminate Employees; Some Do Not

Store Managers are expected to have discretion to make and implement disciplinary decisions as circumstances require.[42]  Some Store Managers do, indeed, discipline employees – with no involvement by their District Managers.[43]  Other Store Managers claim that the District Managers specifically direct what is to be written on disciplinary forms.[44]

With respect to terminating store-level employees, the suggested practice is that Store Managers partner with their District Managers before terminating an employee (though the final decision remains the Store Manager's).[45]  Nevertheless, some Store Managers terminate employees without advising the District Manager.[46]  Other Store Managers cannot terminate anyone without prior approval from the District Manager.[47]  Further, other Store Managers deny having any input whatsoever in termination decisions.[48]

### 5. Some Store Managers Supervise And Delegate; Some Do Not

Store Managers are expected to manage and supervise the store's staff to meet and exceed financial goals and objectives,[49] which entails delegation of tasks to store-level

---

70:17.

[41] Leibert Dep. 155:19-156:25; Jamali Dep., Vol. I 68:16-25.

[42] Gray Dep., 53:11-17, 54:17-22, 55:5-9, 60:17-22; Exhibit 43 (FD-MDL-012895); *see also* Exhibit 15 autheticating Exhibit 43.

[43] Allen Dep. 79:22-25, 80:2-9; Deposition of Rommel Bailey, Vol. II, attached as Exhibit 44. 240:9-242:15; Thomas Dep. 424:11-426:14; Bitkower Dep. 313:23-25, 314:2-21; Taylor Decl. ¶ 12; Boskat Decl ¶ 13; Carroll Decl. ¶ 9.

[44] Deposition of Aslam Jamali, Vol. II, attached as Exhibit 45, 69:7-71:5; Pierce Dep., Vol. I 63:10-64:17; Otero Dep. 253:15-25, 254:2-3; Bender Dep. 20:11-25, 21:1-16.

[45] Gray Dep., 53:11-17, 54:17-22, 55:5-9, 60:17-22; Exhibit 46 (FD-MDL-012900); *see also* Exhibit 15 autheticating Exhibit 46.

[46] Plummer Dep. 200:12-24, 201:2-7, 251:20-25, 252:2-5; Aulet Decl. ¶ 17; Boskat Decl. ¶ 20.

[47] Samuel Dep. 363:20-25; Stanton Dep., Vol. I 38:3-17, 39:8-11; Manowitz Dep. 345:23-25, 346:2-4.

[48] Pierce Dep., Vol. I 60:5-17; Jamali Dep., Vol. I 67:9-68:7, Vol. II 155:16-156:12; Otero Dep. 61:9-18.

[49] Sullivan Dep. 172:7-12; Exhibits 5, 15.

employees.[50]  Some Store Managers are solely responsible for supervising their associates and assigning work accordingly.[51]  Other Store Managers delegate tasks to their associates pursuant to directives from "Corporate" or the District Manager.[52]  Other Store Managers deny that they supervise associates, or delegate any tasks whatsoever.[53]

### 6.    Some Store Managers Schedule Within The Budget; Some Do Not

Store Managers are responsible for managing their stores within a specified payroll budget, which entails scheduling employees in a manner that does not exceed the budget.[54] Most Store Managers are responsible for this scheduling function,[55] while one claimed that the District Manager is responsible for this task.[56]  Some Store Managers follow Family Dollar's Staff Scheduler model when performing the scheduling task.[57]  Other Store Managers ignore it and instead create their own devices to schedule employees and manage their payroll budgets.[58]

---

[50] Flyzik Dep. 154:17-21, 155:11-13.

[51] Plummer Dep. 196:25, 197:2-8; Allen Dep. 140:16-25, 141:2-15; Bender Dep. 15:7-11, 279:25, 280:2-5; Stanton Dep., Vol. II 44:6-21, 59:2-8; Aulet Decl. ¶ 10; Boskat Decl. ¶ 9; Calarco Decl. ¶¶ 3, 7; Carroll Decl. ¶ 12; Cole Decl. ¶ 10; Hosier Decl. ¶ 5; Klein Decl. ¶¶ 6, 9, 10, 31; Declaration of Michael Martin, attached as Exhibit 47, ¶¶ 14-15; Newman Decl. ¶¶ 4, 10; Robinson Decl. ¶¶ 7, 9-10; Whitmore Decl. ¶¶ 6, 10; Peterson Decl. ¶¶ 8, 14; Declaration of Issoufou Nouhou, attached as Exhibit 48, ¶¶ 7, 23-24.

[52] Jamali Dep., Vol. I 85:19-25, 86:2-10, Vol. II, 49:19-25, 50:2-6; Otero Dep. 234:7-22; Manowitz Dep. 318:21-25, 319:2-18; Bitkower Dep. 147:10-17; Klein Dep., Vol. I 93:19-25, 94:2-9.

[53] Deposition of Paul Boyd, Vol. II, attached as Exhibit 49, 97:12-23; Spencer Dep. 72:4-73:15; Leibert Dep. 112:21-113:2, 116:5.

[54] Boyd Dep., Vol. II 97:12-23; Spencer Dep. 72:4-73:15; Leibert Dep. 112:21-113:2, 116:5; Sullivan Dep. 172:7-12; Exhibits 5, 15; Ramcharan Dep. 267:20-25, 268:2-4; Samuel Dep. 90:19-24, 91:2, 258:14-17; Thomas Dep. 294:25, 295:2.

[55] Ramcharan Dep. 266:11-16; Youngblood Dep. 21:6-12, 119:20-120:11; Allen Dep. 11:4-7; Bender Dep. 7:15-18; Stanton Dep., Vol. II 65:15-25; Sorokey Dep. 64:4-8, 93:9-16.

[56] Jamali Dep., Vol. II 80:15-81:13.

[57] Ramcharan Dep. 268:5-11; Deposition of Ronald Lewis, attached as Exhibit 50,  194:5-24.

[58] Youngblood Dep. 126:23-25, 127:2-5; Spencer Dep. 168:4-15; Otero Dep. 79:13-23; Boskat Decl. ¶ 25; Calarco Decl. ¶ 8.

Store Managers deviate from the payroll budget as well.  For example, Kristine Spencer acknowledged that her store exceeded the payroll budget virtually every week.[59]

### 7.    Some Store Managers Modify "Door To Shelf"; Some Do Not

Family Dollar has a "Door to Shelf" policy which contains a standard that all merchandise from the delivery trucks should be placed on shelves and available for sale within 48 hours of delivery.[60]  Door to Shelf is a best practice,[61] and each Store Manager uses and interprets it differently as part of his or her discretion.[62]  To illustrate, Tammy Sorokey had to modify the program based on the size of the delivery, the day of the delivery, and the cash flow of the particular store.[63]  Another Store Manager decided to put away merchandise after the store was closed to minimize clutter and to more efficiently handle the products.[64]  Other Store Managers claim they follow the process to the letter.[65]

### 8.    Some Store Managers Use Discretion In Merchandising; Some Do Not

Family Dollar provides stores with "schematics," which describe the layout of products within a fixture size in a certain category of merchandise[66] and marketing kits that include seasonal planners and signs.[67]  Even with these guides, merchandising requires expertise and planning that will vary based on the physical characteristics of the store.[68]  Thus, many Store Managers deviate, or have authority to deviate, from the corporate plan and merchandise in a

---

[59] Spencer Dep. 123:16-25, 124:2; Deposition of Josiah Smith, attached as Exhibit 51, 196:22-23 (exceeded payroll budget "often" but was not terminated as a result).
[60] Gray Dep., 53:11-17, 54:17-22, 55:5-9, 60:17-22; Exhibit 52 (FD-MDL-012938), *see* Exhibit 15 autheticating Exhibit 52; *see also* Sorokey Dep. 205:4-25, 206:1-2; Bitkower Dep. 21:20-25, 22:2; Bender Dep. 69:19-24; Spencer Dep. 65:17-24.
[61] Sullivan Dep. 192:3-8.
[62] Sullivan Dep. 192:23-25, 193:1-25, 194: 1-8, 198:16-25, 199:1-2.
[63] Sorokey Dep. 205:4-25, 206:1-2.
[64] Gasperini Dep. 153:21-25, 154:1.
[65] Bitkower Dep.  106:22-108:2.
[66] Gasperini Dep. 150:7-11.
[67] Sullivan Dep. 255:19-24; Flyzik Dep. 65:13-16.

way that is best for their stores[69] and make special adjustments based on the actual physical layout of their stores -- all of which are different.[70]   In contrast, other Store Managers allegedly follow the Company-provided schematics without any deviation.[71]

### 9.   Some Store Managers Price And Order Merchandise; Some Do Not

Some Store Managers set discounted prices on damaged goods and have the authority to do so without anyone's approval.[72]   Other Store Managers, however, interpret their authority completely differently, believing that they cannot adjust the price of merchandise.[73]   Similarly, Company policy permits Store Managers to order up to 50 lines of merchandise, which some Store Managers did.[74]   However, other Store Managers denied that they order merchandise.[75]

### D.   Some Managers Concurrently Perform Management And Manual Tasks

Many Store Managers acknowledge that even when performing manual tasks, they are always concurrently managing their stores.[76]   Others claim to be extremely task-based and denied concurrently managing the store while performing manual tasks.[77]

---

[68] Sullivan Dep. 160:12-24.

[69] Aulet Decl. ¶ 38; Boskat Decl. ¶ 37; Calarco Decl. ¶ 13; Carroll Decl. ¶ 13; Hosier Decl. ¶ 15; Peterson Decl. ¶ 32; and Nouhou Decl. ¶ 38.

[70]   See Bailey Dep., Vol. II 270:13-25, 271:1-25 (noting that the schematics did not always fit the various layouts of stores, and he adjusted the schematic to the layout of his store); Bitkower Dep. 176:23-25, 177:2-25, 178:2-12 (same);  Sorokey Dep. 193:19-25, 194:1-10 (same); Allen Dep. 40:24-25, 41:2-19 (same).

[71]   Youngblood Dep. 202:21-25, 203:2-25, 204:2-3; Otero Dep. 23:12-25, 24:2-3; Pierce Dep., Vol. I 99:23-25, 100:2-16; Boyd Dep., Vol. I 47:22-25, 48:2.

[72]   Manowitz Dep. 106:11-22; Bailey Dep., Vol. II 284:16-25, 285:2; Carroll Decl. ¶ 14   Cole Decl. ¶ 21; Klein Decl. ¶ 17; Taylor Decl. ¶ 21.

[73]   Pierce Dep., Vol. I 74:22-25, 75:1-2; Bender Dep. 341:25, 342:2-4; Jamali Dep., Vol. I 66:11-15.

[74]   Manowitz Dep. 91:24-25, 92:2-4; Thompson Dep., Vol. I 14:21-25, 15:1-4; Bender Dep. 323:20-25; Boyd Dep., Vol. I 55:5-15; Bitkower 124:15-23; Bailey Dep., Vol. II 261:6-23.

[75]   Plummer Dep. 310:3-6; Pierce Dep., Vol. I 65:15-20, Vol. II 214:10-24; Jamali Dep., Vol. I 64:17-22; Allen Dep. 158:17-21.

[76]   Allen Dep. 108:16-25, 109:2-6; Boyd Dep., Vol. II 83:20-25, 84:2-10; Spencer Dep. 165:14-25, 166:5-6, 22;  Stanton Dep., Vol. II 58:18-25, 59:2-8, 12-17; Thompson Dep., Vol. I 59:9-18, Vol. II 76:24-25, 77:1-17; Sorokey Dep. 116:22-25, 117:1-4; Manowitz Dep. 179:8-23; Leibert

### E.     District Manager Oversight Varies

District Managers (who do not work in the stores) conduct store visits to review the store and to act as a coach and resource for the Store Manager.[78]   These visits typically occur once a month or even more infrequently.[79]   Indeed, there are some stores which do not receive visits for several years.[80]   Because they supervise approximately 18 Store Managers, District Managers do not manage stores on a daily basis – that is up to the Store Managers.[81]

District Managers vary with respect to the level of oversight they provide to Store Managers.[82]   For example, Tammy Sorokey testified that she had a good relationship with her first District Manager, who "knew [Sorokey] didn't need her," and thus, let her run the store as she saw fit.[83]   Moreover, some District Managers implement practices that deviate from the Company's policies.[84]   To illustrate, Tanya Youngblood confers with her District Manager whenever she gives written discipline to an employee because her District Manager asks her to

---

[77] Dep. 120:10-19; Plummer Dep. 205:20-25, 206:2-11, 214:2-13; Bitkower Dep. 266:9-18; Smith Dep. 168:16-25, 169:1-2); Aulet Decl. ¶¶ 19-20; Boskat Decl. ¶¶ 4-5; Calarco Decl. ¶¶ 2, 18; Cole Decl. ¶ 8; Hosier Decl. ¶ 4; Cheryl Klein Decl ¶¶ 4-5, 32; Robinson Decl. ¶¶ 4, 7; Peterson Decl. ¶ 7; and Nouhou Decl. ¶ 32.

[77] Otero Dep. 87:4-16; Jamali Dep., Vol. I 76:22-77:7; Pierce Dep., Vol. I 88:23-89:12; Bender Dep. 94:24-96:3.

[78] Gasperini Dep. 100:24-25, 101:1-3; 164:14-15, 165:3-21; Sullivan Dep. 290:2-18.

[79] Youngblood Dep. 31:8-22 (once a month); Sorokey Dep. 104:21-105:3 (once every 2 months in one store and once every month and a half in her current store); Stanton Dep., Vol. I 96:7-13 (once every 2-3 months); Thompson Dep., Vol. I 20:20-21:3 (once a month); Spencer Dep. 125:5-126:2 (once a month); Calarco Decl. ¶ 21 (every other month or so); Carroll Decl. ¶ 19 (approximately once a month); Taylor Decl. ¶ 24 (every month or so); Whitmore Decl. ¶ 36 (once a month); Peterson Decl. ¶ 33 (once a month or less).

[80] Gasperini Dep. 31: 7-12.

[81] Sullivan Dep. 286:25-287:13.

[82] Ramcharan 166:13-167:25; Deposition of Christine Klein, Vol. II, attached as Exhibit 53, 101:17-102:17, 104:14-106:14; Plummer Dep. 180:6-183:4.

[83] Sorokey Dep. 71:23-72:16.

[84] Youngblood Dep. 146:19-148:8, 203:15-204:3, 232:19-234:23; Ramcharan Dep. 281:11-283:12.

do so, even though Company policy suggests otherwise.[85]   Some District Managers may provide

their Store Managers with a To-Do list of tasks that needs to be completed for the store.[86]   In

other stores, the Store Manager assigns work to employees.[87]

## III.   PLAINTIFFS FAIL TO SATISFY THE REQUIREMENTS OF RULE 23

In their argument, Plaintiffs rely exhaustively on *Damassia v. Duane Reade, Inc.*

However, the divergent testimony of Plaintiffs and other Store Managers demonstrates that here,

unlike *Damassia*, Plaintiffs cannot satisfy Rule 23.

### A.   Plaintiffs Have Not Met Their Certification Burden

Plaintiffs moving for class certification under Rule 23 must demonstrate that they meet

all of the requirements of Rule 23(a) and one of the three categories of Rule 23(b).  *In re Initial*

*Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) ("*In re IPO*").  Plaintiffs must prove by

a preponderance of the evidence that each requirement has been met, *Id*. at 32-33, and their

evidence must survive "rigorous analysis" by the court.  *In re IPO,* 471 F.3d at 33.[88]

### B.   Plaintiffs Do Not Satisfy Commonality or Typicality

Rule 23(a) requires Plaintiffs to prove that the proposed class action involves questions of

law or fact common to the class and involves class plaintiffs whose claims are typical of those of

the class.  *Myers*, 624 F.3d at 547.  This burden is not easily satisfied.  *In re IPO*, 471 F.3d at 33.

#### 1.   Plaintiffs Cannot Demonstrate Commonality

Plaintiffs claim that the broad, overarching issue of whether Plaintiffs qualify for the

---

[85] Youngblood Dep. 146:19-148:8.

[86] Jamali Dep., Vol. I 16:25-17:14, 116:20-117:15; Lewis Dep. 82:23-83:13; Thompson Dep., Vol. I 11:8-10, 20:20-21:3; Manowitz Dep. 84:2-86:11.

[87] Allen Dep. 140:16-142:2; Calarco Decl. ¶ 12; Cheryl Klein Decl. ¶ 6; Robinson Decl. ¶ 10; Whitmore Decl. ¶ 16; Nouhou Decl. ¶ 24.

[88] Notably, Plaintiffs make several sweeping allegations without citing to any record evidence whatsoever.  *See, e.g.*, Plaintiffs' Memorandum at p. 12 (no citation following assertion that "SMs do not regularly hire, promote, demote or fire employees, train, or raise or lower employee

executive exemption is a question that is common to the putative class of Store Managers. However, the fact-intensive, individualized inquiry necessary to *make* that very determination eviscerates the notion that the issues in dispute are subject to generalized proof that will be applicable to the class as a whole. *See Diaz v. Electronics Boutique of America, Inc*., 2005 U.S. Dist. LEXIS 30382 at *24-27 (W.D.N.Y. Oct. 17, 2005) (recognizing whether defendant properly compensated its employees as common question was "an oversimplification and misstatement of the issues"; analysis of plaintiffs' individual daily activities was necessary).

Unlike *Damassia*, Plaintiffs' proposed class is incapable of using generalized proof to support their claims. This is confirmed by the deposition testimony of the named plaintiffs, who each confirm that their job duties varied from store to store and that each store was different.[89]

In particular, Plaintiffs' argument that determining Store Managers' "primary duty" pursuant to 29 C.F.R. § 541.100(a) is somehow a common question flies in the face of the applicable regulations and the record evidence. With respect to the "primary duty" analysis, the regulations provide a non-exhaustive list of management duties:

> [I]nterviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions of other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The regulations also provide factors to guide the court's analysis of

---

pay, and do not regularly make recommendations about employment decisions").

[89]   Ramcharan Dep. 104:13-106:8; Samuel Dep. 82:3-17; Youngblood Dep. 140:3-18; Thomas Dep. 216:19-217:11; *see Rudd v. T.L. Cannon Corp*., 2011 U.S. Dist. LEXIS 21061 at * 34-35 (N.D.N.Y. Jan. 4, 2011) (*adopted by Rudd*, 2011 U.S. Dist. LEXIS 20968 (N.D.N.Y. March 3,

whether management is an employee's primary duty.  The regulations instruct that the primary duty "means the principal, main, major or most important duty that the employee performs," and that the "major emphasis" should be on the character of the employee's job as a whole, based on all the facts in a particular case.  29 C.F.R. § 541.700(a).  The regulations set forth four factors to consider in this analysis: (1) the amount of time spent performing managerial duties; (2) the relative importance of the managerial duties compared with other types of duties; (3) relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor.  *Id.*

Thus, the Court will have to consider for each Store Manager what management duties they perform, how much time they spend on these duties (and whether they perform other work concurrently therewith), the frequency of District Manager visits, and how the compensation of each Store Manager compares with the wages paid to the hourly employees working in their store.  This last factor is particularly fact-intensive, as each Store Manager's salary differs based on experience, location and other factors, and the average wages paid to the hourly employees in each store similarly differ based on their experience, the number of Assistant Store Managers versus associates, etc.  As demonstrated in Section II above, the fact that the testimony of Store Managers differs so widely on the most relevant issues means that analysis of these elements will undoubtedly require a person-by-person inquiry that destroys commonality.[90]

---

2011) (no commonality where there was variance between store locations)

[90] As such, Plaintiffs' suggestion that the Company's FLSA Audit demonstrates that there are no material differences in Store Manager duties is unavailing.  The Audit itself states that ". . . whether a particular Store Manager meets the executive exemption is an individualized inquiry and will depend on the actual duties of the Store Manager."  FLSA Audit, attached as Exhibit 1, FD-Rancharan-Youngblood-004862.   Similarly, Plaintiffs' argument on page 9 of their Memorandum regarding Sullivan's testimony misses the mark.  Sullivan testified that the overall objective of Store Managers is to run a profitable store, but he specifically noted that the methods to achieve this objective may be different, and that this objective is not always met.  Sullivan Dep. 177:7-18, 179:4-22.   Regardless, Plaintiffs' ***own testimony*** in this case

## 2.   Plaintiffs Cannot Satisfy Typicality

Typicality requires that the "claims of the class representatives [must] be typical of those of the class, and [occurs] when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Diaz*, 2005 U.S. Dist. LEXIS 30382 at *25.   If a named plaintiff's claim is not typical of the class members' claims, then he is not the proper party to represent the proposed class. *Id*. at *25-27. For example, in *Diaz*, the court held that the individualized nature of misclassification claims precluded the plaintiffs from meeting the typicality requirement. *Diaz*, 2005 U.S. Dist. LEXIS 30382 at *26-27.   Specifically, the court noted that each plaintiff's alleged reasons for claiming to be misclassified arose from a course of events particular to that individual's store location. *Id*.

Similarly, here, Plaintiffs' claims lack typicality because they do not arise from the same course of events and/or conduct. *See Eng-Hatcher v. Sprint Nextel Corp*., 2009 U.S. Dist. LEXIS 127262 at *20-21 (S.D.N.Y. Nov. 13, 2009).   Indeed, as described, Store Managers greatly differed in their own descriptions of their overall job function, over such core issues as whether they actually performed certain duties set forth in their job description.[91]

Additionally, in support of certification, Plaintiffs argue that Store Managers' primary duty is to perform manual labor.   However, Store Managers Stanton, Manowitz, Plummer and Smith, for example, all testified that they were ultimately responsible for the store and/or "in charge" of the store even while performing manual tasks.[92]   These distinctions, which go to the

---

demonstrates that material differences in duties exist – and this fact cannot be ignored for certification purposes.

[91]   Sullivan Dep. 179:3-21, 221:14-25; Gasperini Dep. 145:1-7; Sorokey Dep. 123:17-125:2 (agreeing that the Store Manager job description reflects the principal duties and responsibilities of a Store Manager) *cf* Bitkower Dep. 243:20-244:20 (disagreeing with the description of the interviewing and hiring function on the Store Manager job description).

[92]   Stanton Dep., Vol. II 58:18-25, 59:2-17; Manowitz Dep. 179:8-23; Plummer Dep. 205:20-25, 206:2-11, 214:2-13; Smith Dep. 168:16-25, 169:1-2.

heart of the exemption analysis, destroy typicality.  *See Eng-Hatcher,* 2009 U.S. Dist. LEXIS 127262 at *20-22 (plaintiff's claims were not typical where elements of claim would require individualized proof).   Where, as here, a determination of exempt status requires an individualized inquiry, a plaintiff's claims are not typical of any other person's claims.

## C.    Plaintiffs Have Failed To Meet Their Burden Under Rule 23(b)(3)

Plaintiffs seek class certification pursuant to Rule 23(b)(3).  Certification under this provision is permitted only when Plaintiffs prove that questions of law or fact common to class members predominate over any questions affecting only individual members, and that class treatment is superior to individual litigation.  *Myers*, 624 F.3d at 547.

The Second Circuit's decision in *Myers* is controlling on this issue.  In *Myers*, the Second Circuit held that the predominance requirement's purpose is to ensure that the class will be certified *only* when it would "achieve economies of time, effort and expense ... without sacrificing procedural fairness or bringing about other undesirable results."  *Id*. at 547.  In turn, these economies are achieved only if "resolution of some of the legal or factual questions ... can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Id*.  As the Second Circuit recognized, "the question of entitlement to overtime pay is answered by examining the employee's ***actual duties***."  *Id*. at 550 (emphasis added).  Thus, the use of generalized proof in cases such as this is possible only where the actual duties of the putative class are "largely consistent."  *Id*. at 549.

In *Damassia*, the court held that common issues predominated where the testimony of the assistant store managers and even the defendant's corporate representative uniformly showed that that the duties and responsibilities of the managers were centrally derived and did not vary.  250 F.R.D. at 159-161.  Here, in contrast to the unique situation presented in *Damassia*, the testimony of Plaintiffs, other Store Managers and Family Dollar's representatives establishes that

there is no generalized evidence upon which the entire putative class of Store Managers may rely on a simultaneous, class-wide basis. Thus, the putative class is not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). Rather, this is a case similar to *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2011 U.S. Dist. LEXIS 24768 at *60 (N.D. Cal. Feb. 24, 2011) where "for every [plaintiff] who says one thing about his or her job duties and responsibilities, another says the opposite."

Courts must consider potential defenses in assessing the predominance requirement. *Myers*, 624 F.3d at 551. Here, Family Dollar's defense to Plaintiffs' claims is that each Store Manager was properly classified and treated as an exempt executive employee. As discussed in Section II(B)(1) above, the "primary duty" analysis is a fact-specific and individualized inquiry, as is the analysis of whether the Store Managers had authority to hire or fire, or whether their recommendations as to change in status were give particular weight. Nevertheless, Plaintiffs claim that they have established that common issues predominate because (1) Family Dollar classifies all of its New York Store Managers as exempt and promulgates a common job description and policies; and (2) the job duties of these Store Managers are sufficiently similar. The first contention is insufficient for predominance, and the second is demonstrably false.

### 1.    Plaintiffs Have Not Established Predominance

Plaintiffs downplay the need for an individualized inquiry of each Store Manager's actual duties and responsibilities by simply citing to Family Dollar's uniform exemption classification for the Store Manager position. However, it is well settled that the fact that Family Dollar classifies all of its New York Store Managers as exempt does not, by itself, satisfy Rule 23(b)(3)'s predominance requirement. *Myers*, 624 F.3d at 549; *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 955 (9th Cir. 2009). In *Myers*, the Second Circuit cited to and adopted the Ninth Circuit's analysis in *In re Wells Fargo*, where the court held that it

was an **abuse of discretion** for a district court to find that the predominance requirement was satisfied based on the employer's internal policy of treating its employees as exempt.  624 F.3d at 549-50 (citing *In re Wells Fargo*, 571 F.3d at 955-959).  Notably, class certification was denied in the *Wells Fargo* case by the district court on remand.  *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 2010 U.S. Dist. LEXIS 3132 (N.D. Cal. Jan. 12, 2010).[93]

Neither does the fact that Family Dollar uses standardized policies and procedures suffice to establish predominance because, unlike *Damassia*, in this case, many Store Managers testified that they do not adhere to Family Dollar policy.[94]  *See Kopera v. Home Depot U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 3382 at *9-10 (S.D.N.Y. Jan. 11, 2011) ("general corporate policies bear on a predominance analysis only where there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies") (internal citations omitted).[95]

Indeed, this Court should reject Plaintiffs' selective use of Family Dollar's policies and procedures.  Plaintiffs would have this Court believe: (1) that Store Managers dogmatically follow policies and procedures such as the merchandise schematics and the "Door to Shelf" policy (thereby supposedly constraining their use of discretion), but (2) that Store Managers routinely disregard or violate the policies contained in the TEAM training guides that state that Store Managers have hiring authority, set employees' rates of pay, independently determine how to discipline employees and whether to terminate them, etc.  Simply put, Plaintiffs cannot have it

_____

[93] *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009); *Ruggles v. Wellpoint, Inc.*, 2011 U.S. Dist. LEXIS 17310 at *61 (N.D.N.Y. Feb. 22, 2011).

[94] Plaintiffs purport to rely on the FLSA Audit to support their argument that Family Dollar policies are comprehensive and constraining, but the FLSA Audit states that not all policies are strictly enforced and specifically notes that District Managers "will turn a 'blind eye' toward Store Managers who do not follow certain procedures exactly," provided that they still meet overall store standards.  *See* FLSA Audit at FD-Rancharan-Youngblood-004857.

[95] *Edwards*, 268 F.R.D. at 184 ("plaintiffs' effort to avoid consideration of what actually occurred with each putative class member by reference to the [form agreement and training materials] is insufficient to show that there are common issues, that they predominate, or that the

both ways.

Regardless, Plaintiffs' argument that Store Managers are strictly constrained by Family Dollar policies is directly contradicted by the record evidence, including their own deposition testimony.  For example, many Store Managers deviate from the merchandise schematics and make special adjustments based on the actual physical layout of their stores, to ensure that merchandising is done in a way that is best for their stores.[96]  Similarly, some Store Managers modify the Door to Shelf program based on their own needs and preferences.[97]  Regarding hiring, some Store Managers conduct interviews using the questions suggested in the Company's Interview Guide, while others prefer to ask their own questions.[98]  Finally, some Store Managers use the TEAM training (formerly "Strands") manuals to train their associates, while others have never even read or used these materials.[99]  These are just a few examples of the ways in which Store Managers may modify or vary from Family Dollar procedure.

Similarly, Plaintiffs' arguments regarding Family Dollar's supposed standardized hierarchy and reporting structure and assertion that the District Manager is the leader of the "Store Team" are contradicted by the record evidence.  Family Dollar's representatives consistently testified that the District Manager is not the leader of the Store Team, and that the Store Manager is, in fact, the head of the Team.[100]

---

named plaintiffs' claims are typical of the putative class members")

[96] Bailey Dep., Vol. II 270:13-25 – 271: 1-25; Bitkower Dep. 176:23-25 – 178:12; Sorokey Dep. 193:19-25, 194:1-10; Aulet Decl. ¶ 38; Boskat Decl. ¶ 37; Calarco Decl. ¶ 13; Hosier Decl. ¶ 15.

[97] Sorokey Dep. 205:4-25, 206:1-2; Gasperini Dep. 153:21-25. 154:1; Sullivan Dep. 192:23-25, 193:1-25, 194:1-8, 198:16-25.

[98] Samuel Dep. 171:16-23; Spencer Dep. 134:7-17; Plummer Dep. 233:7-9; Bender Dep. 184:5-13.

[99] Allen Dep. 144:19-25, 145:2-10; Spencer Dep. 140:23-25, 141:2; Sorokey Dep. 94:7-12; Jamali Dep., Vol. I 147:4-13; Otero Dep. 82:24-25, 83:2-8.

[100] Clegg Dep. 71:11-25 – 72:1-10; Gasperini Dep. 93:13-23, 164:14-15, 165:3-14; Sullivan Dep. 187:4-7.

## 2.    Individualized Issues Predominate

The predominance requirement is "a more demanding criterion than the commonality inquiry under Rule 23(a)." *Ruggles v. Wellpoint Inc.,* 2011 U.S. Dist. LEXIS 17310 at *52 (N.D.N.Y. Feb. 22, 2011).  In order to determine if all Store Managers in the proposed class are exempt under the New York Labor Law, the court necessarily must determine which of the tasks performed by Store Managers are exempt functions and whether the exempt functions are the Store Managers' primary duty.  This analysis can only be accomplished on an individual, Store Manager-by-Store Manager basis.

The instant case is on all fours with *Myers*.  In *Myers*, plaintiffs were station managers of the defendant's car rental facilities who sued for allegedly unpaid overtime wages under the New York Labor Law.  624 F.3d at 542-43.  The district court denied plaintiffs' motion for class certification under Rule 23, and the Second Circuit affirmed, holding that the district court had reasonably concluded that common issues would not predominate.  Specifically, the court noted that plaintiffs did not contend that their own testimony relating to their job duties was "generalizable" to station managers elsewhere, the defendant's corporate representative testified that each store was unique and that there were variances among the company's locations, and a manager transferred to a new location may require some training related to that specific location before being able to perform the required duties.  *Id.* at 549-50.  The Second Circuit distinguished cases like *Damassia,* where the evidence showed that job duties were largely consistent across the class, and that individual issues did not predominate.  *Id.* at 549.

In addition to *Myers*, other courts in this Circuit have routinely denied certification in wage and hour cases where, in light of the employer's exemption defense, individualized inquiries overwhelm any common questions.  For example, in *Kopera*, the court held that the question of whether Assistant Store Manager trainees were properly classified as exempt was

"likely to be overwhelmed by a case-by-case inquiry."  2011 U.S. Dist. LEXIS 3382 at *10.  The plaintiffs there claimed that the company training guide established a commonality of experience, but the evidence showed that significant variation in the training (such as its duration, time spent working on the training guide, and the duties that the trainees performed during their training) caused individualized issues to predominate over common issues.  *Id.* Similarly, in *Ruggles*, the court held that plaintiffs failed to establish predominance, recognizing that "whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description." 2011 U.S. Dist. LEXIS 17310 at *53-63.  The court further stated that "where the duties at issue go directly to key aspects of the exemption, those differences are of utmost significance to the ultimate question of whether each employee's exemption was proper.  *Id.* at *63.  Other courts in New York and around the nation have reached the same conclusion.[101]

Thus, Plaintiffs' reliance on *Damassia*, is misplaced.  In *Damassia*, the court certified a class of assistant store managers based on the fact that the duties of the managers were centrally derived and did not vary, and that the testimony of the assistant managers themselves did not reveal material differences in their responsibilities.  250 F.R.D. at 156-59.  For example, the

---

[101] *See, e.g., Diaz*, 2005 U.S. Dist. LEXIS 30382 at *20 ("a determination of nonexempt status requires an inquiry into the specifics of [plaintiff's] job and a similarly individualized inquiry into the specifics of each [store manager] whom plaintiffs are seeking to join"); *Brothers v. Portage National Bank*, 2009 U.S. Dist. LEXIS 109769 at *19-20 (W.D. Pa. Mar. 4, 2009) ("[T]he Court cannot understand how the analysis of the propriety of an exempt classification is anything but an individualized determination as to each employee so classified.  The fact intensive nature of such individualized determinations is the hallmark of individual actions, not collective actions"); *Jiminez v. Domino's Pizza, Inc.*, 234 F.R.D. 241, 251 (C.D. Cal. 2006) ( "to determine which employees are entitled to overtime because of improper classification is an individual, fact-specific analysis of each general manager's performance of managerial and non-managerial tasks"); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 244-49 (C.D. Cal. 2006) ("individual questions predominate over common issues ... [b]y far the bulk of the evidence would pertain to individualized questions, including the work performed by each individual [assistant manager]").

defendant's corporate representative testified that assistant store managers were not permitted on their own authority to hire, fire, transfer, or promote employees, or to give them raises, nor did the authority to perform these functions vary from assistant manager to assistant manager.  *Id*. at 157.[102]  Also, one of the plaintiffs, who worked in five (5) different stores, testified that there was no significant variation in job duties between any of these stores.  *Id*. at 159.  Finally, the defendant agreed that its business practices were uniform, and that a single handbook governed employee behavior; as such, "each store has the same exact policy as every other store."  *Id*.

Plaintiffs in this case demonstrate no such uniformity in job responsibilities and experiences.[103]  Unlike *Damassia*, Plaintiffs in this case ***explicitly concede*** that every store is different and that their duties and responsibilities varied depending on which store they managed.[104]  For example, Christina Klein testified that her specific responsibilities varied depending on her contact with her District Managers.[105]  As discussed at length in Section II, the differences among Store Managers are material, in that they go to the most fundamental questions in the executive exemption analysis, such as the authority to hire or fire, evaluating employees and setting their rates of pay, the amount of time performing managerial duties such as training, supervising and disciplining employees, and the extent to which they exercised

---

[102] Admissions such as these regarding key factors of the exemption analysis (which are not present in the instant case), vitiate the need for an individualized analysis.

[103] Plaintiffs' reliance on the FLSA audit on this point is unavailing.  First, Plaintiffs cite to a sentence of the audit that reads "the basic tasks that a Store Manager must perform to operate a store are the same across all three classifications," but conspicuously omit the remainder of that sentence, which reads "although time spent on various tasks may vary greatly across stores and between Store Managers."  *See* FLSA Audit at FD-Rancharan-Youngblood-004811.  Under the regulations, the amount of time spent on various management activities is a factor in the exemption analysis.  29 C.F.R. § 541.700(a).  Further, the FLSA audit also prominently states that "the FLSA demands an individualized inquiry based on the specific facts concerning individual Store Managers."  *See* FLSA Audit at FD-Rancharan-Youngblood-004796.

[104] Ramcharan Dep. 104:13-106:8; Samuel Dep. 82:3-17; Youngblood Dep. 140:3-18; Otero Dep. 166:21-167:7; Pierce Dep., Vol. II 99:12-23, 136:16-137:23; Sorokey Dep. 191:14-25, 205:14-206:12; Thomas Dep. 216:19-217:11.

discretion and deviated from Family Dollar's best practices.

Moreover, as discussed in more detail above, the record evidence demonstrates that Plaintiffs and members of the putative class often deviated from Family Dollar's policies and procedures, so their day-to-day activities were not strictly governed by them.[106]

Since the experiences of Plaintiffs vary so widely, there is simply no way that Plaintiffs' experiences can be generally applied to the proposed class of Store Managers. *See Edwards v. Publishers Circulation Fulfillment*, 268 F.R.D. 181, 184 n.10 (S.D.N.Y. 2010). The individualized issues that this Court and/or a jury would need to consider in adjudicating this matter ensure that certification not achieve the desired economies of time, effort, and expense.

### 3.   Individual Issues Will Make A Class Action Unmanageable

To certify a class, Plaintiffs must also prove that maintenance of a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. Here, the inability to offer common proof on the most important contested issues means that successful adjudication of one plaintiff's claims cannot establish a right to recovery for other putative class members. As such, individual issues will dominate this litigation, and the greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action. *See, e.g., Nguyen v. BDO Seidman, LLP*, 2009 U.S. Dist. LEXIS 97524 at *28 (C.D. Cal. July 6, 2009).[107]

---

[105] Klein Dep., Vol. II 101:17-106:14.

[106] *See, e.g.,* Sorokey Dep. 205:4-206:2; Bender Dep. 68:3-70:8; Bailey Dep., Vol. II 270:7-271:21; Aulet Decl. ¶ 38; Boskat Decl. ¶ 37.

[107] The recent *Big Lots Stores, Inc.* case demonstrates these manageability concerns, even under the less stringent FLSA standard. *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567 (E.D. La. 2008). The court conditionally certified an FLSA collective action, denied defendant's motion to decertify, and then conducted a bench trial. *Id.* at 569-71. After the bench trial, the *Johnson* court decertified the class because there was "significant variation" among the plaintiffs' job duties. *Id.* at 568. *See also Gromek v. Big Lots, Inc.*, 2010 U.S. Dist. LEXIS 134009 at *11-13 (N.D. Ill. Dec. 17, 2010) (determination of plaintiff's status requires a "detailed factual analysis of his daily activities and responsibilities"); *Vinole*, 571 F.3d at 947 (undue burden on court where, because of lack of issues subject to common proof, hundreds of mini-trials were needed.)

In fact, attempting to adjudicate Plaintiffs' claims through common proof would violate Family Dollar's due process right to raise affirmative defenses as to individual plaintiffs and cross-examine witnesses to determine liability as to each specific person. *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 117 (D.N.J. 2009); *Jiminez*, 238 F.R.D. at 253.

As discussed above, Plaintiffs' varying testimony regarding their essential job functions mandates a person-by-person analysis of their qualification for the executive exemption. The jury will be inundated with vastly divergent testimony as to the type of work Plaintiffs performed on an everyday basis, how much time they spent on various tasks, their hiring or firing authority, their relative freedom from supervision, their exercise of discretion, etc. Therefore, it is inevitable that a class trial will result in a series of mini-trials for each member of the putative class. Under these circumstances, a class action is not superior.

## IV.    CONCLUSION

Allowing this case to proceed as a class action would circumvent the purpose of Rule 23 because proof of one Plaintiff's claim does not serve as proof of the claims of the proposed class. Thus, this Court should deny Plaintiffs' motion to certify a class under Rule 23.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I served the foregoing Defendant's Response In Opposition To Plaintiffs' Motion For Class Certification upon the following via ECF:


**Seth Lesser**
**Fran Rudich**
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
seth.lesser@klafterolsen.com
fran.rudich@klafterolsen.com

**Marc Hepworth**
**David A. Roth**
Hepworth, Gershbaum & Roth, PLLC
192 Lexington Ave., Suite 802
New York, New York 10016
marc@hgrlawyers.com
david@hgrlawyers.com


**Robert E. DeRose**
Barkan Meizlish Handelman Goodin
DeRose Wentz, LLP
250 E. Broad Street, 10th Floor
Columbus, OH  43215
bderose@bnhmlaw.com


Dated: May 18, 2011


<u>s/ Amy S. Ramsey</u>
John A. Ybarra
Amy S. Ramsey
Syeda H. Maghrabi
LITTLER MENDELSON, P.C.
321 N. Clark Street
Suite 1000
Chicago, Illinois  60654
Tel:  312.372.5520
Fax:  312.372.7880